## TOWN OF BLOOMFIELD *v.* UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMERICA/ CONNECTICUT INDEPENDENT POLICE UNION, LOCAL NO. 14*

Superior Court, Judicial District of Hartford

File No. CV-06-4020925S

Memorandum filed November 15, 2006

---

* Reversed. *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local* 14, 285 Conn. 278, 939 A.2d 561 (2008).

*Noble, Spector, Young & O'Connor, P.C.,* for the plaintiff.

*McEleney & McGrail, LLC,* for the defendant.

HON. RICHARD M. RITTENBAND, JUDGE TRIAL REFEREE. On February 11, 2004, police Officer Donald Rajtar responded to a report that an off-duty employee had threatened the manager of Lee's Famous Recipe Chicken Restaurant with a gun and then left the store. Rajtar interviewed the manager, Marlon Hutchinson. There were inconsistencies between what Rajtar said happened and what the witnesses said happened as to the conversations Rajtar had with them. The police chief of Bloomfield authorized an internal affairs investigation which was conducted by Sergeant Matthew Wilhauer. Sergeant Wilhauer found that Rajtar was dishonest and stated as part of his report: "Officer Rajtar is the only party questioned in my investigation with any motivation to be dishonest, that motivation being the avoidance of any consequences for his handling of the incident at Lee's [Famous Recipe Chicken Restaurant] on February 11."

At the hearing before this court on October 20, 2006, the parties stipulated that town manager Louie Chapman, Jr., following the internal affairs investigation, offered Rajtar a two week suspension plus retraining as discipline for his untruthfulness. Rajtar rejected that offer, following which town manager Chapman terminated his employment. Rajtar then appealed to a three member arbitration panel. After a full hearing, the arbitrators found Rajtar was untruthful in the statements he made during the course of his internal affairs interviews concerning what was said in the conversations with Hutchinson and an employee named Hinkson. The issue before the arbitration panel of the state board of mediation and arbitration was as follows: "Was the Grievant,

Officer Donald Rajtar, terminated for cause consistent with the collective bargaining agreement and applicable Personnel Rules and Regulations? If not what should the remedy be?" The parties had not been able to agree on the statement of the issue, as a result of which the panel set forth the issue as aforementioned as an unrestricted submission. In its award dated December 28, 2005, the panel found in pertinent part: "In conclusion, we have given serious thought to the remedy in this case. We agree with the Town's position that certain conduct is so detrimental it justifies immediate termination and the Grievant's conduct in this case fits into this category. He conducted a seriously flawed investigation and attempted to cover up his incompetence by fabricating the testimony of key witnesses." The panel also found that Rajtar had not only been untruthful during the internal affairs investigation and disciplinary proceedings, but he was also untruthful in his testimony before the arbitration panel.

The panel concluded, however, that the penalty for Rajtar for lying (termination) was an action lacking in evenhandedness; that is, there were two other police officers of the Bloomfield police department who had been found to be lying and were not terminated. The panel concluded, therefore, that it would be unfair, in view of this precedent, to terminate Rajtar. Accordingly, the panel's decision was to reinstate Rajtar "to his prior position and reduce his termination to a suspension of 200 workdays. He shall be made whole for any remaining days due to him minus any other income including unemployment compensation that he may have received." As a result of this award, the plaintiff filed the present application to vacate the arbitration award. The plaintiff's application was based upon violation of General Statutes §§ 52-418 and 52-420b as well as the claim that the arbitration award is a violation of public policy. United Electrical Radio and Machine Workers of America/Connecticut Independent Police

Union, Local No. 14, the respondent, then filed a motion to dismiss, and the court, *Keller, J.,* granted, in part, the motion to dismiss in a memorandum of decision dated April 27, 2006, dismissing the claims under §§ 52-418 and 52-420b for procedural reasons. The court, however, did let stand the claim that the award violated public policy.

The only issue before this court, therefore, is whether Rajtar's lying as a police officer in the performance of his duties violated a public policy that requires truthfulness and honesty in law enforcement.

I

STANDARD OF REVIEW

The court's role "in addressing a public policy challenge [is] confined largely to determining whether, as gleaned from a statute, administrative decision or case law, there exists a public policy mandate with which an arbitral award must conform." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.,* 252 Conn. 416, 428, 747 A.2d 1017 (2000). It is well settled law that the relevant inquiry is not whether the conduct in question violates public policy, but rather whether the arbitrator's decision to reinstate violates public policy. Further, it is also well settled law that the court must accept the facts as found by the arbitration panel. "Rather than requiring that public policy be grounded on a particular type of source, however, in determining whether a party has satisfied its burden of demonstrating the existence of a well-defined public policy, we have instead focused our inquiry on whether the alleged public policy is in fact clearly discernable in the purported source." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.,* 273 Conn. 634, 657–58, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.,* 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). "The public policy exception applies only when

the award is clearly illegal or clearly violative of a strong public policy." *Garrity* v. *McCaskey*, 223 Conn. 1, 7, 612 A.2d 742 (1992). "We conclude that where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, *colorable* basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy." (Emphasis added.) *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 429. "We are required to give deference to arbitrators' factual determinations, including questions of credibility." *Board of Police Commissioners* v. *Stanley*, 92 Conn. App. 723, 735, 887 A.2d 394 (2005).

## II

## ISSUES AND FINDINGS

Before reaching the central issue in the present case, the court makes the following observations.

First, the action of the arbitration panel in reinstating Rajtar was based upon the finding that two other police officers had lied prior to the untruths spoken by Rajtar and they had not been terminated. The panel concluded that this was not treating the officers equally and was unfair to Rajtar, and even though the panel found that he had lied, it nevertheless reinstated him as a matter of fairness based upon precedent. This logic is absurd. If the Bloomfield police department were to be held to this conclusion, all police officers in the future could lie with impunity. The termination of Rajtar may be disparate in view of precedent, but the lying by a police officer has to stop here. The respondent's counsel has claimed that the court is estopped from granting the application to vacate because of the aforementioned precedent. The court disagrees for the reasons stated.

Second, both parties seem to rely heavily on General Statutes § 7-294d, which sets forth the criteria under

which the Police Officers Standards and Training Council (council) may revoke a police officer's certification. That is not the case here. There is no allegation or claim that there has been a violation of § 7-294d. It was the plaintiff that discharged Rajtar for lying and not the council. Accordingly, § 7-294d is irrelevant.[1]

Third, there are several cases in which the termination of a police officer has been upheld. See *Board of Police Commissioners* v. *Stanley*, supra, 92 Conn. App. 723; *International Brotherhood of Police Officers* v. *Windsor*, 40 Conn. Sup. 145, 483 A.2d 626 (1984). The public policy against lying by a police officer in these cases, however, was set forth in department rules or regulations. The plaintiff does not have a specific set of rules prohibiting lying by a police officer. Paragraph 11 of its rules for preliminary investigation, however, requires that an officer "[a]*ccurately* and completely record all information on the prescribed report forms." (Emphasis added.) Rajtar, at least in his draft report or application for arrest warrant, was intentionally inaccurate and, therefore, untruthful in violation of the aforementioned paragraph 11. Although paragraph 11 is not a specific prohibition against lying, it can be construed as a public policy prohibiting lying by a police officer in that situation, which Rajtar obviously violated.

*Did Rajtar violate a public policy based upon a statute and/or case law?*[2] The short answer to this question is *yes*.

---

[1] General Statutes § 7-294d was adopted in 2005 after the incidents of lying by Rajtar and is not retroactive.

[2] The court will set aside an arbitration award if it creates a conflict with other "laws and legal precedents." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 655. "[W]hether, as gleaned from a *statute*, administrative decision or *case law*, there exists a public policy mandate with which an arbitral award must conform." (Emphasis added.) *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 428.

General Statutes § 54-86c is entitled: "Disclosure of exculpatory information or material" and provides in relevant part: "(a) Not later than thirty days after any defendant enters a plea of not guilty in a criminal case, the state's attorney, assistant state's attorney or deputy assistant state's attorney in charge of the case shall disclose any exculpatory information or material which he may have with respect to the defendant whether or not a request has been made therefor. If prior to or during the trial of the case, the prosecutorial official discovers additional information or material which is exculpatory, he shall promptly disclose the information or material to the defendant. . . . (c) Each peace officer . . . shall disclose in writing any exculpatory information or material which he may have with respect to any criminal investigation to the prosecutorial official in charge of such case."

It is well settled law that evidence of a witness having previously lied, including in the present case, is exculpatory material that the defense can use for impeachment purposes. See *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000). "It is well established that impeachment evidence as well as exculpatory evidence falls within [the] definition [under *Brady* v. *Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)] of evidence favorable to an accused. . . . A plea agreement between the state and a key witness is impeachment evidence falling within the definition of exculpatory evidence contained in *Brady*." (Citations omitted; internal quotation marks omitted.) *State* v. *Floyd*, supra, 737. In *Brady*, the court found that suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or the bad faith of the prosecution. This was followed by *Giglio* v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), in which the court held that when

reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the rule that suppression of material evidence justifies a new trial irrespective of good faith or bad faith of the prosecution. The United States Supreme Court went even further in 1976 in deciding that prosecutors have a constitutional duty to turn over exculpatory information voluntarily to defense attorneys. These cases, although federal, apply to the criminal justice system in Connecticut. Connecticut has codified these decisions in § 54-86c. In *Kyles* v. *Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), the court held that prosecutors bear a personal responsibility to make the court or jury aware of any materials possessed by an investigative agency that are helpful to the defense. Such materials include not only exculpatory information but also any findings or substantiated allegations that call into question the credibility of a government witness. With respect to law enforcement officers, any past finding or substantiated allegations that the officer falsified testimony, reports, vouchers, or assisted others in doing so, would fall within the scope of this obligation.[3] In federal prosecutions in Connecticut, if a police department employee, such as a police officer, is identified as a potential government witness, the United States attorney's office routinely requests a review of personnel files which may reveal any findings or substantiated allegations that call into question the credibility of the officer. Section 54-86c, and the aforementioned case law by which

---

[3] The United States Supreme Court has upheld a law enforcement administrator's ability to discharge officers for untruthfulness. See *LaChance* v. *Erickson*, 522 U.S. 262, 118 S. Ct. 753, 139 L. Ed. 2d 695 (1998). "[W]e hold that a Government agency may take adverse action against an employee because the employee made false statements in response to an underlying charge of misconduct." Id., 268. The false statement was not made under oath. "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson* v. *United States*, 396 U.S. 64, 72, 90 S. Ct. 355, 24 L. Ed. 2d 264 (1969).

state prosecutors are bound will produce a result that each time Rajtar makes an arrest, the plaintiff will be obligated to inform the prosecutor's office of the findings of untruthfulness of Rajtar during both the initial investigation and the subsequent disciplinary investigation as well as before the arbitration panel. The plaintiff's policy would undoubtedly be that Rajtar is not to make an arrest or make an application for an arrest warrant. As stated by Judge (now judge trial referee) Satter in *International Brotherhood of Police Officers* v. *Windsor*, supra, 40 Conn. Sup. 148: "Here a far more important public policy is involved. The honesty of police officers is central to our criminal justice system. In signing search and arrest warrants, judges depend completely on the truthfulness of the police officers' affidavits supporting them. Likewise, fundamental rights rest on the accuracy of police records and a falsehood in the arrest record could imperil the prosecutor's case."

*It is, therefore, this court's conclusion that there is a clear public policy in Connecticut, based upon § 54-86c and the common law as described in the aforementioned cases, that it is against public policy for a police officer to lie. The statute and case law aforementioned is the clearly discernable public source of the public policy. MedValUSA Health Programs, Inc. v. MemberWorks, Inc., supra, 273 Conn. 657.*

*This court also concludes that the record substantiates by substantial evidence that Rajtar did lie in the performance of his duties, and therefore, violated public policy.*

*Further, the arbitration panel, in reinstating . . . Rajtar, violated this public policy prohibiting police officers from lying.*

## III

## CONCLUSION

Accordingly, the plaintiff's motion (or application) to vacate the arbitration award is granted.