TOWN OF STRATFORD *v.* AMERICAN FEDERATION
OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 15, LOCAL 407
(AC 33962)

Alvord, Bear and Mihalakos, Js.

Argued October 22, 2012—officially released February 5, 2013

*Garrett A. Denniston*, for the appellant (plaintiff).

*Richard P. Gudis II*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. "In any employment, an employer is entitled to expect of his employees the qualities of truthfulness, honesty and integrity. . . . In the case of

police officers of a municipality, these qualities are particularly essential." (Citation omitted.) *Wilber* v. *Walsh*, 147 Conn. 317, 320, 160 A.2d 755 (1960). In this appeal, the plaintiff, the town of Stratford (town), appeals from the judgment of the trial court denying its application to vacate an arbitration award rendered in favor of the defendant, American Federation of State, County and Municipal Employees, Council 15, Local 407 (union), reinstating a municipal police officer who had been terminated from employment for violating police department policy by lying during a medical examination. The town claims that the court improperly denied its application to vacate because the arbitration award violates a clearly discernable public policy against intentional dishonesty by police officers in connection with their employment. We agree and, accordingly, reverse the judgment of the trial court.

The relevant facts, as found by the arbitration panel, and procedural history are undisputed. The town employed Justin Loschiavo as a police officer beginning in 2006. On June 6, 2009, Loschiavo, who suffers from epileptic seizures, experienced a seizure while operating a police vehicle and struck two parked cars. After Loschiavo's personal physician cleared him to return to duty, the town referred Loschiavo to a neurologist for a medical examination to determine what conditions would allow Loschiavo "to return to employment while eliminating or minimizing any potential risks with potentially fatal consequences." The neurologist cleared Loschiavo to return to work full-time but required that Loschiavo be allowed to "call out sick" whenever he felt signs of an impending seizure.

Ronald Ing, the town's director of human resources, reviewed the neurologist's examination report and discovered discrepancies between the report and the medical information supplied to the town by Loschiavo's

personal physician. Specifically, Ing noted that Loschiavo did not inform the neurologist of two additional seizures he had experienced since 2004. Loschiavo also denied to the neurologist that he consumed alcohol, whereas the records from his physician indicated that he had used/abused alcohol previously.[1]

After the town provided the neurologist with this additional medical information, the neurologist examined Loschiavo a second time. The neurologist's report of this second examination stated that he was not sure that Loschiavo " 'can be trusted to avoid activities that might increase his susceptibility to having seizures, particularly alcohol use,' " but he ultimately stated that Loschiavo " 'presents no more of a risk now than he did since the time of his initial hiring. Perhaps, he could be even safer because of his increased awareness regarding his disorder and what he needs to do to control it.' "

Upon receiving the neurologist's report, the town charged Loschiavo with a violation of police department policy[2] for lying during the independent medical

---

[1] Loschiavo's physician had noted that "breakthrough seizures" had been related to the use of alcohol.

[2] Specifically, Loschiavo was charged with violating section 2.1 of the police department policy, regarding "Integrity, Conduct Unbecoming an Officer and Attention to Duty." That section reads in relevant part as follows: "Integrity: The public demands that the integrity of its law enforcement officers be above reproach. . . . An officer must avoid any conduct which might compromise the integrity of the Department or fellow officers, or him/herself. . . . Conduct Unbecoming an Officer: A police officer is the most conspicuous representative of government. To the majority of the people, police officers are a symbol of stability and authority upon which they can rely. . . . The conduct of a police officer has possible ramifications, which may reflect on the Department. . . . [E]mployees must avoid conduct, which might impair the reputation or efficiency of the Department. . . . Attention to Duty: As most police work is performed without close supervision, responsibility for proper performance of duty lies with the officer. . . . An officer has the responsibility for the safety of the community . . . and discharges that responsibility by faithful and diligent performance of duty. Anything less violates the trust placed in him/her by the people."

examination.[3] The town conducted a pretermination hearing[4] regarding Loschiavo's possible discharge; Loschiavo was terminated following the hearing.

The union subsequently filed a grievance on Loschiavo's behalf alleging that the town violated the parties' collective bargaining agreement by terminating Loschiavio without just cause. After a hearing before the state board of mediation and arbitration, a three member arbitration panel sustained the grievance and ordered that the town reinstate Loschiavo without back pay and without loss of seniority. The panel stated that although the violation Loschiavo "was accused of committing is a very serious one for a police officer who is charged with upholding the law," his "lying about his physical and mental condition to doctors that could return (or prevent) [him] to work is understandable because [he] wants [his] job back." The panel further noted that the town was aware of Loschiavo's condition when he was hired and inferred that Loschiavo's job performance was "at least satisfactory." The panel thus concluded that Loschiavo's termination "was excessive."

The town then filed an application to vacate the arbitration award, arguing, inter alia, that an arbitration award encouraging dishonesty in a police officer violates the clear public policy in Connecticut against lying by police officers. The court rejected this argument and denied the town's application to vacate, citing the limited standard of review over arbitration decisions and a purported lack of "authority which requires the dismissal of a uniformed police officer, in situations

[3] The union acknowledged that Loschiavo had lied to the neurologist during the initial examination regarding his medical history, and the union conceded that this conduct violated police department policy.

[4] In *Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532, 542–46, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), the Supreme Court held that due process requires that a public employee be given "some kind of" a pretermination hearing prior to his or her discharge.

where that officer tells a deliberate untruth." This appeal followed.

On appeal, the town claims that the court erred in determining that the award reinstating Loschiavo was not against public policy.[5] Specifically, the town asserts that the award violates a clearly discernable public policy against intentional dishonesty by police officers in connection with their employment. We agree.

We begin by setting forth the standard of review and legal principles applicable to our resolution of this appeal. "Judicial review of arbitral decisions is narrowly confined. . . . When the scope of the submission [to the arbitrators] is unrestricted,[6] the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence

---

[5] The town also argues on appeal that the court erred in concluding that the arbitrators did not exceed their authority under General Statutes § 52-418 (a) (4). Because our conclusion on the public policy issue is sufficient to warrant reversal of the court's judgment, we do not reach the town's second claim.

[6] Neither party disputes that the submission to the arbitrators here was unrestricted.

considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The long-standing principles governing consensual arbitration are, however, subject to certain exceptions. Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey*, [223 Conn. 1, 6, 612 A.2d 742 (1992)], [our Supreme Court] listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418 (a). . . . The judicial recognition of these grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard of judicial review of arbitral conclusions, despite the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission." (Internal quotation marks omitted.) *Hartford* v. *Hartford Municipal Employees Assn.*, 134 Conn. App. 559, 565–67, 39 A.3d 1146, cert. denied, 305 Conn. 904, 44 A.3d 180 (2012). As the town's appeal primarily implicates the second exception, it will be the focus of our discussion.

Our Supreme Court has stated that "where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000).

"A two-step analysis . . . [is] often employed [in] deciding cases such as this. First, the court determines

whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy. . . . We note that [t]he party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail . . . only if it demonstrates that the [arbitrators'] award clearly violates an established public policy mandate. . . . It bears emphasizing, moreover, that implicit in the stringent and narrow confines of this exception to the rule of deference to arbitrators' determinations, is the notion that the exception must not be interpreted so broadly as to swallow the rule." (Internal quotation marks omitted.) *Hartford* v. *Hartford Municipal Employees Assn.*, supra, 134 Conn. App. 568. Our courts "have looked to a variety of sources in determining whether an arbitral award violates a well-defined public policy, and have cited, as examples of possible sources, statutes, administrative decisions and case law." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 657, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005).

The town claims that there is a well-defined public policy in Connecticut against police officers intentionally lying in connection with their employment, a policy which the town asserts is set forth plainly in case law and in the General Statutes.[7] First, in *International*

---

[7] Relying on *Bridgeport* v. *Bridgeport Police Dept. Employees Local 1159, Council 15, AFSCME, AFL-CIO*, Superior Court, judicial district of Fairfield, Docket No. CV-91-0281769-S (May 16, 1994), the town also asserts that General Statutes § 7-276, read in combination with the town's police department policies, supports the conclusion that public policy mandates honest and law-abiding police officers. Our Supreme Court, however, has indicated that reliance on § 7-276 as a basis for public policy is inappropriate where— as here—the town in question does not have a board of police commissioners. See *South Windsor* v. *South Windsor Police Union Local 1480, Council 15*, 255 Conn. 800, 817–18, 823, 770 A.2d 14 (2001). We need not rely on

*Brotherhood of Police Officers* v. *Windsor*, 40 Conn. Sup. 145, 146, 483 A.2d 626 (1984), the court vacated an arbitration award denying a grievance filed by a police officer who had been disciplined for insubordination when he refused to sign his name to an untrue return on an arrest warrant. The court's decision rested on its characterization of "[t]he honesty of police officers" as an "important public policy" that is "central to our criminal justice system." Id., 148. The court stated that the award punished the officer for "insisting on being truthful," and thereby violated this public policy. Id.

Similarly, in *Bloomfield* v. *United Electrical Radio & Machine Workers of America/Connecticut Independent Police Union, Local No. 14*, 50 Conn. Sup. 180, 188, 916 A.2d 882 (2006), rev'd on other grounds, 285 Conn. 278, 939 A.2d 561 (2008), the court stated definitively that "there is a clear public policy in Connecticut . . . that it is against public policy for a police officer to lie."[8] In *Bloomfield*, a police officer made untrue statements during an internal affairs investigation into the officer's handling of an incident. Id., 181. The town terminated the officer's employment, but an arbitration panel subsequently reinstated him. In considering whether the officer's "lying as a police officer in the performance of his duties violated a public policy that requires truthfulness and honesty in law enforcement," the court

§ 7-276 in any event because the other authorities upon which the town relies plainly demonstrate a clear public policy against intentional dishonesty by police officers in connection with their employment.

[8] The fact that the public policy is set forth in Superior Court decisions is not fatal to the town's claim. As our Supreme Court has stated, "[r]ather than requiring that public policy be grounded on a particular type of source . . . we have instead focused our inquiry on whether the alleged public policy is in fact clearly discernible in the purported source." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 657–58; see also id., 664 (party must cite "*any decision or line of decisions* clearly demonstrating the existence of a well-defined and dominant public policy" [emphasis added]).

relied primarily on General Statutes § 54-86c. Id., 183, 185–86. Section 54-86c, Connecticut's codification of the *Brady* rule,[9] requires the state to disclose to a criminal defendant any "exculpatory information or material." As the court in *Bloomfield* noted, our Supreme Court has held that "evidence of a witness having previously lied" is exculpatory material falling within these disclosure requirements. *Bloomfield* v. *United Electrical Radio & Machine Workers of America/Connecticut Independent Police Union, Local No. 14*, supra, 186, citing *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000). The court further recognized that the United States Supreme Court has held that prosecutors "bear a personal responsibility to make the court or jury aware of . . . any findings or substantiated allegations that call into question the credibility of a government witness," and that prosecutors routinely review police department personnel files to determine the existence of these "findings or substantiated allegations." *Bloomfield* v. *United Electrical Radio & Machine Workers of America/Connecticut Independent Police Union, Local No. 14*, supra, 187, citing *Kyles* v. *Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

In light of these disclosure requirements, the court reasoned that § 54-86c and *Brady*'s progeny "will produce a result that each time [the officer] makes an arrest, [the town] will be obligated to inform the prosecutor's office of the findings of untruthfulness of [the officer]. . . . The [town's] policy would undoubtedly be that [the officer] is not to make an arrest or make an application for an arrest warrant." *Bloomfield* v. *United Electrical Radio & Machine Workers of America/Connecticut Independent Police Union, Local No. 14*, supra, 50 Conn. Sup. 188. The court concluded,

[9] *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

therefore, that "there is a clear public policy in Connecticut, based upon § 54-86c and the common law . . . that it is against public policy for a police officer to lie," and ultimately vacated the arbitration award reinstating the officer because the arbitration panel "violated this public policy prohibiting police officers from lying." Id.

We agree with the town that these authorities plainly demonstrate a clear public policy in Connecticut in favor of honest police officers and, consequently, against lying by police officers in connection with their employment.[10] The arbitration award reinstating Loschiavo directly implicates this public policy against intentional dishonesty by police officers, and our inquiry thus shifts to whether enforcing the award violates the public policy. See, e.g., *State* v. *AFSCME, Council 4, Local 391*, 125 Conn. App. 408, 419, 7 A.3d 931 (2010), cert. granted on other grounds, 300 Conn. 912, 13 A.3d 1101 (2011). "Our analysis of this issue is confined to the facts as found by the arbitrator." (Internal quotation marks omitted.) Id.

Here, the union concedes that Loschiavo intentionally lied during a medical examination into the conditions that would allow him safely to return to work and

---

[10] At oral argument before this court, the union appeared to suggest that, to the extent a public policy exists against intentional dishonesty by police officers, this public policy should be tempered by a sliding scale to measure the degree of an officer's lie, and consequently, to determine the appropriate punishment for a dishonest officer on a case-by-case basis. We decline to attach the union's proposed conditions to our holding, however, because condoning a subjective "degrees of dishonesty" test would dilute what we conclude to be a clear public policy against any intentional dishonesty by police officers in connection with their employment. Moreover, although some hypothetical set of facts may require us to consider whether an arbitral award concerning punishment for a so-called "lesser lie" implicates the public policy against intentional dishonesty by police officers, the lie at issue here—an intentional lie about a matter directly related to the safe and effective performance of an officer's duties—does not present that case.

We also reject the union's argument in its brief that the "proper forum to address the alleged public policy violation . . . lays with the Police Officer Standards and Training Council [council]," pursuant to General Stat-

to perform his duties as a police officer. The arbitration panel's determination to reinstate Loschiavo in spite of this conduct runs contrary to the well-defined public policy against intentional dishonesty by police officers in connection with their employment. See *Board of Police Commissioners* v. *Stanley*, 92 Conn. App. 723, 742, 887 A.2d 394 (2005) (reviewing court cannot enforce arbitral award reinstating police officer to employment when he has violated public policy). Accordingly, the award cannot stand.

The judgment is reversed and the case is remanded with direction to grant the town's application to vacate the arbitration award.

In this opinion the other judges concurred.

utes § 7-294d. The town has made clear that it "is not relying on § 7-294d, nor is [it] alleging a breach of the [council's] standards in any way."