******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF STRATFORD *v.* AMERICAN
FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES,
COUNCIL 15, LOCAL 407
(SC 19130)

Rogers, C. J., and Palmer, Zarella, Eveleigh and Espinosa, Js.

*Argued March 25—officially released December 23, 2014*

*Eric R. Brown*, for the appellant (defendant).

*Christopher J. Smedick*, with whom, on the brief, was *James Cresswell*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The dispositive issue in this certified appeal is whether an arbitration award reinstating a police officer, as opposed to the mandated dismissal of the officer, violated a clearly discernible public policy against intentional dishonesty by police officers in connection with their employment. The plaintiff, the town of Stratford, filed an application to vacate an award from an arbitration proceeding initiated by the defendant, American Federation of State, County and Municipal Employees, Council 15, Local 407, that reinstated the grievant, Justin Loschiavo, to his employment as a police officer with the Stratford Police Department after he was terminated for lying in connection with his employment. The trial court rendered judgment denying the plaintiff's application and, on appeal, the Appellate Court reversed that judgment and concluded that the arbitration award violated a clear public policy against intentional dishonesty by police officers in connection with their employment. *Stratford* v. *AFSCME, Council 15, Local 407*, 140 Conn. App. 587, 597, 60 A.3d 288 (2013). This court granted the defendant's petition for certification to appeal on the following issue: "Did the Appellate Court properly determine that the arbitration award in this matter reinstating [Loschiavo] violated a clearly discernible public policy against intentional dishonesty by police officers in connection with their employment which mandated dismissal of [Loschiavo]?" *Stratford* v. *AFSCME, Council 15, Local 407*, 308 Conn. 922, 923, 94 A.3d 639 (2013). We conclude that while there is a public policy against intentional dishonesty by police officers in connection with their employment, the arbitration award in the present case did not violate public policy. Accordingly, we reverse the judgment of the Appellate Court.

The arbitration decision sets forth the following undisputed facts relevant to our resolution of this appeal. Loschiavo started working as a probationary police officer for the plaintiff in 2006. He suffers from latent epilepsy, and the plaintiff required that as a condition to his hiring, Loschiavo must remain seizure free throughout his probationary period. He satisfied this requirement and was apparently seizure free until June 6, 2009, when he suffered a seizure while operating a police car and consequently struck two parked cars. Loschiavo's physician, Philip Micalizzi, cleared him to return to light duty in August, 2009, at which point the plaintiff referred Loschiavo to a neurologist, Samuel L. Bridgers, for an independent medical examination to determine "what conditions might allow [Loschiavo] to return to employment while eliminating or minimizing any potential risks with potentially fatal consequences." Although Bridgers determined that Loschiavo was capable to return to work full-time, he restricted this clearance to require Loschiavo to call out sick whenever he

felt symptoms of an oncoming seizure.

Upon reviewing Bridgers' report, the plaintiff's human resources director found two discrepancies between that report and the medical report from Micalizzi, Loschiavo's physician. Specifically, Loschiavo failed to inform Bridgers about two seizures he suffered in 2005 and 2008; he further failed to disclose that he had been using or abusing alcohol. Bridgers thereafter reviewed Loschiavo's full medical record and determined that the seizures had been related to alcohol use. He reported that he was unsure whether Loschiavo " 'can be trusted to avoid activities that might increase his susceptibility to having seizures, particularly alcohol use.' " Bridgers determined, however, that Loschiavo presented no greater risk after these seizures than he did at the time of his initial hiring, and again cleared him to return to duty.

In light of Bridgers' second report, the plaintiff charged Loschiavo with violating police department policy by lying during the independent medical examination. On March 30, 2010, the plaintiff held a hearing at which Loschiavo was represented by the defendant and counsel. Following the hearing, the plaintiff terminated Loschiavo's employment on the ground that he violated police department policy by lying during the independent medical examination. Following Loschiavo's termination, the defendant filed a grievance on his behalf alleging that his termination was without just cause and in violation of the parties' collective bargaining agreement.

A three member arbitration panel conducted a hearing and thereafter determined that Loschiavo's termination was "excessive" for two reasons. First, Micalizzi and Bridgers both returned Loschiavo to his full duties without restrictions and, second, the plaintiff knew of Loschiavo's condition when he was hired and did not raise any issue of Loschiavo's work performance. The arbitration panel concluded that "[a] police officer's lying about his physical and mental condition to doctors that could return . . . [him] to work is [a very serious violation, but] understandable because [he] wants [his] job back." On December 8, 2010, the panel ordered that the plaintiff reinstate Loschiavo "without [back pay] but no loss [of] seniority." The panel also "recognize[d] that the [plaintiff] is well within its rights to have [Loschiavo] examined by a medical doctor, from time to time, to make sure that his condition is stable and that he is not using alcohol." Thus, Loschiavo's total reprimand for the violation was a suspension of nine months without back pay, from his March, 2010 termination to the December, 2010 reinstatement, and his possible subjection to future medical examinations.

The plaintiff filed an application to vacate the arbitration award on the ground that the award encouraged police officer dishonesty and thereby violated Connecti-

cut's clear public policy against lying by law enforcement personnel. The trial court rejected the plaintiff's argument based on the court's limited standard of review over arbitration decisions and the lack of clear authority requiring a police officer to be terminated for this type of misconduct.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. The Appellate Court concluded that the arbitration award violated a well-defined public policy against the intentional dishonesty of a police officer in the course of his or her duties and, accordingly, reversed the trial court's judgment and remanded the case to that court with direction to grant the plaintiff's application to vacate the award. *Stratford* v. *AFSCME, Council 15, Local 407*, supra, 140 Conn. App. 596–97. This certified appeal followed.

On appeal, the defendant argues that there is no dominant, well-defined public policy against police officer dishonesty during an independent medical exam. The defendant claims that termination is required only when the specific type of a police officer's misconduct or dishonesty is prohibited by statute, and that mandating termination for all degrees of dishonesty would be unnecessary, costly, and a threat to public safety. Given the absence of an articulated public policy prohibiting this type of police officer dishonesty, the defendant argues that the arbitration panel's decision should be upheld.

In response, the plaintiff argues that case law establishes a clear, well-defined, and dominant public policy against police officer dishonesty in connection with official duties. The plaintiff concedes that not every lie told by a police officer that related to his job would require termination. Rather, it argues that "a police officer who intentionally lies regarding the status [of] his condition to return to work, despite the risk that his condition could pose to the public, violates . . . public policy, and that an arbitral award mandating the reinstatement of a police officer who has lied in such a fashion violates the concomitant policy that an employer should not be required to retain that police officer."[1]

We conclude that there is a public policy against intentional police officer dishonesty in connection with official duties because integrity and trustworthiness are integral to performing these duties. We also conclude, however, that under the facts in the present case, the arbitration panel's decision to punish Loschiavo with a nine month suspension without back pay and with the possibility of being subjected to future medical examinations did not violate this public policy.

We begin our analysis with the applicable standard of review. "[W]e favor arbitration as a means of settling private disputes, [thus] we undertake judicial review of

arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 391*, 309 Conn. 519, 526, 69 A.3d 927 (2013). We will, however, submit to higher scrutiny an arbitration award that "is claimed to be in contravention of public policy." (Internal quotation marks omitted.) Id.; see General Statutes § 52-418 (a) ("any judge . . . shall make an order vacating the award if it finds . . . [4] . . . the arbitrators have exceeded their powers"). "[P]arties cannot expect an arbitration award approving conduct which is . . . contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 391*, supra, 527.

Thus, when "a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy." (Internal quotation marks omitted.) Id. As this court maintained in *AFSCME, Council 4, Local 391*, "we defer to the arbitrator's interpretation of the agreements regarding the scope of the [contract] provision . . . . We conclude only that as a reviewing court, we must determine, pursuant to our plenary authority and giving appropriate deference to the arbitrator's factual conclusions, whether the contract provision in question violates those policies." (Emphasis omitted.) Id., 528. Accordingly, the sole issue before the court is whether the arbitration award of nine months without back pay and subjection to possible future medical examinations violates public policy.

This court employs a two-pronged analysis to determine whether an arbitration award should be vacated for violating public policy. First, the court must determine "whether an explicit, well-defined and dominant public policy can be identified. If so, the court then decides if the arbitrator's award violated the public policy." (Internal quotation marks omitted.) Id., 529.

Thus, under the first prong, we begin by determining whether there is an explicit, well-defined and dominant public policy against intentional dishonesty of police officers in connection with their employment. We look to statutes, administrative decisions, and case law to determine the existence of public policy. *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 657, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960,

126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). Although we determine that our statutes contain no explicit, well-defined public policy against intentional police officer dishonesty,[2] we conclude that there is undisputedly a common public interest in the integrity and trustworthiness of local police forces.[3] The public expects police officers to be credible and honest in their law enforcement duties. Accordingly, we conclude that there is a public policy against the employment of law enforcement personnel who have engaged in intentional dishonesty that directly pertains to their qualification and ability to perform official duties.

Having concluded that there is a public policy against intentional police officer dishonesty in connection with his or her employment, we must consider the specific facts and circumstances of the present case in order to determine whether the arbitration award reinstating Loschiavo's employment violated that public policy. "In other words, we must determine whether [the] public policy *required* the grievant's dismissal." (Emphasis added.) *State* v. *AFSCME, Council 4, Local 391*, supra, 309 Conn. 531. In making this determination, "we are mindful that the fact that an employee's misconduct implicates public policy does not require the arbitrator to defer to the employer's chosen form of discipline for such misconduct." Id., 532. Indeed, "an arbitrator reasonably may consider circumstances such as the length of employment, previous instances of [misconduct] by the employee, and the circumstances and severity of the misconduct under review in determining the likelihood of future misconduct and whether discipline less severe than termination would constitute a sufficient punishment and deterrent." *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 271 Conn. 127, 138–39, 855 A.2d 964 (2004). Finally, this court has recognized that, although "the arbitrator's decision must draw its essence from the agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies*." (Emphasis altered; internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 391*, supra, 309 Conn. 532, quoting *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 41, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).

Thus, we must consider whether Loschiavo's dishonesty was "so egregious that it requires nothing less than the termination of [his] employment so as not to violate public policy . . . ." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 391*, supra, 309 Conn. 531. We conclude that it was not. Loschiavo's conduct, although serious, did not compromise his qualifications or ability to perform his official duties as a police officer, because Micalizzi, his physician, and Bridgers, his neurologist, were both aware of his dishonesty and yet still cleared him to return to duty. Indeed,

Bridgers ultimately determined that, even with knowledge of the information that Loschiavo withheld, Loschiavo " 'presents no more of a risk now than he did since the time of his initial hiring.' " Loschiavo did not lie under oath and his dishonesty was not disruptive or repeated; he was not dishonest before his fellow police officers or while performing his official duties. He was not warned about the repercussions of his misconduct so he was not incorrigible, and the punishment that he received was severe.[4]

By way of comparison, we look to our recent decision in *State* v. *AFSCME, Council 4, Local 391*, supra, 309 Conn. 541–42, where we determined that an award of anything short of termination did violate public policy. There, the grievant, who was a correction officer employed by the Department of Correction, knowingly and repeatedly violated the "well-defined and dominant public policy against workplace sexual harassment as established by General Statutes § 46a-60 (a)," despite recurring complaints. Id., 525. The grievant engaged in a pattern of behavior that occurred in the presence of other employees and inmates, which "perpetuate[d] a hostile, intimidating and offensive work environment . . . ." (Internal quotation marks omitted.) Id., 541. Thus, in that case, this court concluded that the grievant's termination was required because his behavior, unlike Loschiavo's behavior in the present case, was "knowing, egregious, incorrigible and disruptive . . . ." Id., 542.

Moreover, although Loschiavo was allowed to return to work, it was only after a period of nine months without back pay and with the condition that he could be subject to future medical examinations. When the plaintiff and the collective bargaining agreement do not proscribe the specific disciplinary action for a grievous misconduct,[5] it is certainly within the arbitration panel's discretion to consider the fact that termination is not always required. In addition, the parties collectively bargained to submit the question of just cause for termination to arbitration, and thus expected the arbitration panel to consider the grievant's overall record in fashioning its award.

For the foregoing reasons, we conclude that, although there is a public policy against intentional police officer dishonesty in connection with the officer's employment, Loschiavo's lies were not so egregious that the arbitration panel's award of nine months suspension without back pay and with the possibility of being subjected to future medical examinations violated that public policy.[6] Requiring termination under the facts of the present case would unnecessarily expand the "stringent and narrow confines of [the] exception" to confirming an arbitration award and "swallow the rule" granting deference to arbitration awards.[7] (Internal quotation marks omitted.) *State* v. *New England Health Care*

*Employees Union, District 1199, AFL-CIO*, supra, 271 Conn. 136.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion ZARELLA and EVELEIGH, Js., concurred.

[1] The plaintiff specified that although the intentional lie in the present case mandated termination, other intentional lies about the status of a police officer's condition to return to work would not. For example, the plaintiff acknowledged that a police officer's intentional lie that he was very sick, told so that he would be excused from work, would not be so egregious as to require termination, even though the officer would be lying about his ability to perform on that day.

[2] We discern from our statutes no public policy against intentional police officer dishonesty unless the dishonesty constitutes a crime, either by a false written statement under oath or a statement pursuant to a form bearing notice that contains punishable false statements. The plaintiff claims that one statute, General Statutes § 54-86c, reflects our legislature's intent to require police officers to be honest. Section 54-86c (a) provides in relevant part that "the [state] . . . shall disclose any exculpatory information or material which [it] may have with respect to the defendant whether or not a request has been made therefor. . . ." See also *Brady* v. *Maryland*, 373 U.S. 83, 87–88, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); Practice Book § 40-11.

The defendant contends that the only Connecticut statute governing police officer dishonesty is General Statutes § 7-294d, which targets specific lies that, unlike Loschiavo's, rise to the level of criminal conduct or fraud. Under § 7-294d, the Police Officer Standards and Training Council (council) may refuse to renew, cancel or revoke a police officer's certification. The grounds for revoking certification do not explicitly include dishonesty, but are limited to false statements under General Statutes § 53a-157b (a), which provides that "[a] person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function." See General Statutes § 7-294d (c) (2) (I) (referencing § 53a-157b). As the dishonesty in the present case did not rise to the level of a false statement under § 53a-157b, § 7-294d does not apply here.

[3] At least one Superior Court decision has concluded that there is a clear public policy against intentional police dishonesty that directly pertains to police officers' official duties. In *Bloomfield* v. *United Electrical Radio & Machine Workers of America/Connecticut Independent Police Union, Local No. 14*, 50 Conn. Supp. 180, 189, 916 A.2d 882 (2006), rev'd on other grounds, 285 Conn. 278, 939 A.2d 561 (2008), the trial court vacated an arbitration award that reinstated a police officer after he was dishonest in a police report and during an internal affairs investigation. The trial court determined that "there is a clear public policy in Connecticut, based upon [General Statutes] § 54-86c and the common law . . . that it is against public policy for a police officer to lie." Id., 188.

A second case, *International Brotherhood of Police Officers, Local No. 328* v. *Windsor*, 40 Conn. Supp. 145, 483 A.2d 626 (1984), discussed a public policy supporting police officer truthfulness. There, the trial court considered an arbitration award that upheld a police officer's suspension for insubordination after he was ordered to lie about his involvement in an arrest warrant but insisted on being truthful. Id., 146. The trial court reasoned that "[t]he honesty of police officers is central to our criminal justice system." Id., 148. It found that the arbitration award violated clear public policy because it contradicted General Statutes § 53a-157b and because "[i]n signing search and arrest warrants, judges depend completely on the truthfulness of the police officers' affidavits supporting them . . . [and] fundamental rights rest on the accuracy of police records and a falsehood in the arrest record could imperil the prosecutor's case." Id.

[4] We note that the record does not reflect whether Loschiavo's reinstatement as a police officer could include responsibilities other than those in which he would be expected to testify as a witness in a criminal trial. We believe, however, that the dissent overstates the ramifications that might occur should Loschiavo be called to testify. Although the state must disclose evidence affecting a witness' credibility; see footnote 2 of this opinion; this

type of incriminating information can be introduced only for impeachment purposes as to witness credibility on cross-examination. "[T]he only way to prove misconduct of a witness for impeachment purposes is through examination of the witness. . . . The party examining the witness must accept the witness' answers about a particular act of misconduct and may not use extrinsic evidence to contradict the witness' answers." (Citation omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 427, 97 A.3d 920 (2014).

[5] Section 2.1 of the plaintiff's police department policy, as set forth in the arbitration award, provides in relevant part that "[a]n officer must avoid any conduct which might compromise the integrity of the [d]epartment or fellow officers, or him/herself." See *Stratford* v. *AFSCME, Council 15, Local 407*, supra, 140 Conn. App. 589 n.2.

[6] While we agree with the dissent that the first prong of our two-prong test is met insofar as there is a public policy against police officer dishonesty, we disagree with the dissent's analysis of the second prong because it does not seem to take into account the policy of deference to arbitration awards in reaching its conclusion. Given that we also consider the strong policy of deference to arbitration; see *State* v. *AFSCME, Council 4, Local 391*, supra, 309 Conn. 526; we conclude in the present case that deference to the decision of the three member arbitration panel is appropriate because the sanction of nine months without pay and future medical examinations is a sufficiently severe penalty that it does not violate public policy.

[7] Courts in other states have similarly declined to vacate arbitration awards that reinstated police officers for dishonesty. See, e.g., *State* v. *Public Safety Employees Assn.*, 257 P.3d 151, 153, 166 (Alaska 2011) (arbitration award reinstating police officer who lied about violating motorcycle safety class rule against "horseplay" was not contrary to explicit, well-defined public policy); *Washington County Police Officers' Assn.* v. *Washington County*, 335 Or. 198, 200, 63 P.3d 1167 (2003) (arbitration award reinstating police officer who lied about using illegal narcotic was not contrary to explicit, well-defined public policy); *Kitsap County Deputy Sheriff's Guild* v. *Kitsap County*, 167 Wn. 2d 428, 432–33, 440, 219 P.3d 675 (2009) (arbitration decision to reinstate deputy sheriff who was terminated for twenty-nine documented incidents of misconduct, including untruthfulness, did not violate explicit, well-defined, and dominant public policy).